# CHESHIRE,

## JULY TERM, A. D. 1856.

---

## TROY *v.* HASKELL.

A conveyance of land to a town, "for the use and benefit of the public, and *to* be improved for a public common and no other purpose," vests the legal estate in the town as trustee for the public, but without any beneficial interest.

Where that portion of a town in which land thus holden by it is situate, is severed from the rest by an act of the Legislature, and made into a new town, without any provision in respect to such land, the legal title remains, unaffected by the change of territorial jurisdiction, in the original town.

WRIT OF ENTRY, for a tract of land in the town of Troy, in said county, described in the plaintiff's declaration, a copy of which is annexed and makes a part of this case. Pleas, disclaimer as to part, *nul disseizin* as to the residue. Copies of said pleas are hereto annexed and make a part of this case, as also a copy of the deed from Thomas Tolman to the town of Fitzwilliam, under which the plaintiff claims. This action was referred to a commissioner, who at this term of the court made his report, a copy of all which that is material is hereto annexed, and makes a part of this case.

### PLAINTIFF'S DECLARATION.

In a plea of land, wherein the said Troy demands against the said Haskell possession of a certain tract of land, situate in said Troy, described as follows, to wit: Beginning at a point on the northerly side of the Swanzey road, so called, ninety feet easterly of the Tolman House, so called; thence north forty-five

degrees east, to the westerly side of the Turnpike road, so called; thence southerly on said Turnpike road to the intersection of the said Swanzey road; thence north, on said road, fifty eight and one half degrees west, thirteen and nine tenths rods, to the place of beginning : Whereof the said Haskell unjustly and without judgment disseized the said town within twenty years now last past.

Whereupon the said town of Troy say that they were seized of the demanded premises in their demesne as of fee, with the appurtenances, within twenty years now last past; and the said Haskell disseized him thereof, and still unjustly withholds the same.

### DEFENDANT'S PLEAS.

And the said Joseph Haskell comes and defends the force and injury when, &c., and as to all that part of the demanded premises except a portion thereof described as follows : Beginning at the fence on the south side of his dwelling-house, at a point north forty-five degrees east from a stone set in the ground on the north side of the old Swanzey road, then running easterly, northerly and westerly, as the fence now stands, to land occupied by Brown Nurse. The said Haskell says that as to all that part of the demanded premises, except as aforesaid, he is not tenant thereof as of freehold, nor was such on the day of the purchase of the plaintiff's writ, nor at any time afterwards, nor ever had or claimed to have, nor does he now have or claim to have anything in the premises so demanded, but wholly disclaims to have anything in the same, and this he is ready to verify. Wherefore he prays judgment of the plaintiff's writ, and that, as to all that part of the demanded premises excepted as aforesaid, the said writ may be quashed.

By LEVI CHAMBERLAIN, his attorney.

And as to all the residue of the premises in the plaintiff's writ demanded, the said Haskell comes and defends, &c., when, &c., and for plea says, he never disseized the plaintiffs in manner and form as the plaintiffs have declared, and of this he puts himself on the country.        By LEVI CHAMBERLAIN, his attorney.

And the plaintiff likewise.

By WHEELER & FAULKNER, attorneys for Troy.

QUITCLAIM DEED—*Thomas Tolman to the Town of Fitzwilliam.*

Know all men by these presents, That Thomas Tolman, of Fitzwilliam, in the county of Cheshire and State of New-Hampshire, gentleman, for and in consideration of the sum of fifty dollars and — cents, to me paid by the town of Fitzwilliam, in said County and State, the receipt whereof I do hereby acknowledge, have remised, released, and forever quitclaimed, and do by these presents remise, release, and forever quitclaim unto the said town of Fitzwilliam forever, certain pieces of land, situated in Fitzwilliam and Marlborough, in said County and State, bounded as follows, viz: Beginning at a stake and stones about ninety feet east of my dwelling-house on the road leading from said Fitzwilliam to Swanzey; thence north-eastwardly about three rods, to land owned by Capt. Elnathan Gorham; thence, in the same direction, bounded west by Capt. Gorham's land and the turnpike road, as far as my land goes north; thence south-eastwardly as far east as my land goes, to land owned by Jonathan Wood, as far south as my land goes; thence westwardly, bounded south on the Fitzwilliam and Swanzey road, to the first mentioned bounds, all public roads excepted. Said land is to be for the use and benefit of the public, and to be improved for a public common, and no other purpose. To have and to hold the same, together with all the privileges and appurtenances thereunto belonging, to the said town of Fitzwilliam forever. And I do hereby engage to warrant and defend the same against all claims arising by, from or under me.

In witness whereof I have hereunto set my hand and seal, this tenth day of August, in the year of our Lord one thousand eight hundred and fourteen.

THOMAS TOLMAN. [SEAL.]

Signed, sealed, and delivered in presence of

ELNATHAN GORHAM,
DANIEL W. FARRAR.

State of New-Hampshire: Cheshire ss., August 10, 1814. Then Thomas Tolman personally appeared and acknowledged the foregoing instrument to be his voluntary act and deed. Before me, JOSHUA HARRINGTON, Justice of the Peace.

Cheshire Records — Received 1st July, 1853. Recorded in book 176, page 38. Examined by H. A. BILL, Register.

### COMMISSIONER'S REPORT.

The demanded premises, on the 10th of August, 1814, belonged to Thomas Tolman, of Fitzwilliam, in said county, who, by his quitclaim deed of that date, duly executed and acknowledged on the same day, and recorded in the records of said county, July 1, 1853, conveyed the same, with other land therein described, to said town of Fitzwilliam. Immediately following the description in said deed is the following clause: " Said land is to be for the use and benefit of the public, and to be improved for a public common and no other purpose." Said land was then in the town of Fitzwilliam.

The Legislature of this State, by an act approved June 23, 1815, incorporated the said town of Troy, and included within the limits of Troy that part of the town of Fitzwilliam in which the demanded premises were situate. Since the date of said deed of Thomas Tolman, all the land therein described (which is in question between these parties in this suit,) has remained unenclosed and open to public use, except that part of the demanded premises not disclaimed, and the defendant has committed no act of disseizen unless upon the part not disclaimed. Of this part he had exclusive possession at the time of disseizen alleged in the plaintiffs' declaration, and still holds the same.

The defendant contended —

1. That the town of Troy has no legal title to any part of the demanded premises.

2. That the defendant, and those under whom he claims, have had the undisturbed occupancy and possession of that part of the demanded premises, not disclaimed, for more than twenty years prior to the commencement of this suit, adverse to the possession of the plaintiffs.

3. That the plaintiffs declare on their seizin in fee generally: That the conveyance from the grantor to the town of Fitzwilliam is " for the use and benefit of the public, and to be improved for a public common and for no other purpose;" that this does not

give a fee simple to the grantees, and that they are bound to declare according to their title.

The defendant claimed the title under a deed from Horatio Lawrence to him, dated April 6, 1841, duly executed, acknowledged and recorded, and describing the following premises, by reference to a former deed, viz: " A certain piece or tract of land, with the buildings thereon, situated in Troy village, running from the south-west — of the common to land of David Wilder ; thence westerly to a stake and stones ; it being the north-west corner of said land ; thence southerly to a stake and stones at the road ; thence easterly on the road to the first mentioned bound, containing about one fourth of an acre, be the same more or less ; which described premises adjoined the Common, so called, at the place in question ; and showed by deeds of Stephen Tolman, dated October 16, 1824, and of the other successive owners, conveyance of the same to said Lawrence, prior to the date of his deed.

The evidence on both sides in relation to the lines and to the precise extent of the adverse possession, was very indefinite, but I find that the defendant and those under whom he claims, for more than twenty years prior to the commencement of the plaintiffs' action held adversely to the proprietors of the demanded premises that part of the same not disclaimed, which lies west of a line running north 45° east, and passing at the south-east corner of the defendant's house.

FREDERICK VOSE, Commissioner.

*Chamberlain,* for the defendant, took the following positions :

1. The plaintiffs cannot recover unless they show a title to the demanded premises. If they fail in that, the form of the pleadings is of no importance, and the case is to be decided as upon the plea of the general issue.

The act incorporating Troy does not vest in that town any property belonging to Fitzwilliam. It merely invests the new town with territorial and municipal jurisdiction within its limits. *Union Baptist Soc.* v. *Candia,* 2 N. H. 20.

2. The plaintiffs declare on a seizin in fee generally. The case shows a title from Tolman of a limited and qualified nature.

3. The defendant shows an adverse possession of that part of the demanded premises not disclaimed, for more than twenty years.

*Wheeler & Faulkner*, for the plaintiffs, maintained these positions:

1. The town of Fitzwilliam having in fact been divided, the Common, as part of the immovable public property, belongs to the town in which it is situate.

2. The defendant's claim by occupancy is negatived by the finding of the commissioner, as to all the premises now in question lying easterly of the line indicated at the close of the report.

3. The plaintiffs do not declare upon their seizin in fee simple, but in fee generally, and evidence of a qualified fee supports the declaration as well as of a fee simple.

They further contended in argument that the statute of limitations did not run against the State, or against a town holding land for a public use; that the decision in *Baptist Society* v. *Candia*, cited by the defendant, rested on the fact that the town held the property for private uses; that where a town holds real property for a public use, if the territory is put by an act of the legislature within the limits of another town, the title passes to the other town with the territory; and that if Fitzwilliam were to convey to Troy, it might work a forfeiture, according to the principle recognized in *Wood* v. *Cheshire County*, 32 N. H. 421.

FOWLER, J. By the deed from Thomas Tolman the demanded premises were conveyed to the town of Fitzwilliam "for the use and benefit of the public, and to be improved for a public common, and no other purpose." This conveyance vested the legal estate in Fitzwilliam; for it is well settled that when an estate is conveyed to trustees with a requisition to do any act to which the seizin and possession of the legal estate are necessary, the fee will vest in them; in other words, the legal estate will vest whenever it is necessary for the purpose of effecting the trust. *Upham* v. *Varney*, 15 N. H. 466, 467, and authorities.

But Fitzwilliam held the premises only as trustee. The town, as a corporation, had no beneficial interest in them. The town was the mere instrument for carrying out the intention of the grantor. It was not a mere depositary of the estate, but bound to see that the design of the grantee was effectuated by the perpetual dedication of the premises to the purposes of a public common.

Under these circumstances, did the act dissevering a portion of Fitzwilliam, and constituting a new town by the name of Troy, within whose limits the demanded premises were situate, divest the title from Fitzwilliam and transfer it to Troy? Did it discharge Fitzwilliam from her obligations as trustee and impose them upon Troy? It seems to us clearly not, and we are unable to discover any sound principle of law or equity leading to such a conclusion. The general doctrine is well established, that such a division would in no way affect the title of Fitzwilliam to any property, movable or immovable, belonging to the corporation, wherever situate, nor release her from any duties or obligations incumbent upon her in respect to the same.

In *Union Baptist Society* v. *Candia*, 2 N. H. 20, where the question in relation to the ownership of a lot of land granted to Chester for the use of the ministry, and subsequently sold by Candia, within whose limits it had fallen by the incorporation of a portion of Chester into a town by that name, was discussed, the court said : " Whether by the grant there vested in Chester an absolute fee, a base fee determinable on the settlement of a minister, a trust for each theological association, or any other imaginable interest, is of no consequence. Candia is now sued, and yet it is apparent that when Candia was formed from Chester, though this lot fell within its boundaries, it was not conveyed to that town, either in its charter of incorporation or by any vote of Chester. The title to it, therefore, like the title to all other land within its limits, remained unchanged ; and the town acquired over that, as over other land, only a corporate jurisdiction. It is questionable whether the trust would not have been violated by an attempt to pass the title to Candia. True it is,

Candia has since proceeded to sell this lot ; but upon these facts, the sale could pass no title to the purchasers, and upon the covenants or otherwise the town is liable to refund to them whatever has been received."

In *Windham* v. *Portland*, 4 Mass. 389, where the question involved related to the settlement of a pauper, and an attempt was made to charge him upon Portland, on the ground that his residence, when he acquired his settlement, was in that portion of Falmouth which had been incorporated as Portland, prior to the passage of the statute relating to the settlement of paupers on the division of towns, Chief Justice *Parsons*, in delivering the opinion of the court, remarked : " A town incorporated may acquire property, real or personal. It enjoys corporate rights and privileges, and is subject to obligations and duties. If a part of its territory and inhabitants are separated from it, by annexation to another, or by the erection of a new corporation, the former corporation still retains all its property, powers, rights and privileges, and remains subject to all its obligations and duties, unless some provision should be made by the act authorizing the separation. Thus it would continue seized of all its lands, possessed of all its personal property, entitled to all its rights of action, bound by all its contracts, and subject to all its duties."

This doctrine was expressly recognized and applied to counties by Chief Justice *Parker*, in delivering the opinion of the court in *Hampshire* v. *Franklin*, 16 Mass. 86, where it is said that " by general principles of law, as well as by judicial construction of statutes, if a part of the territory and inhabitants of a town are separated from it by annexation to another, or by the erection of a new corporation, the remaining part of the town, or the former corporation, retains all its property, powers, rights and privileges, and remains subject to all its obligations and duties ; unless some express provision to the contrary should be made by the act authorizing the separation. And the same principles will apply with equal force where a county is divided."

In *Denton* v. *Jackson*, 2 Johns. Ch. 336, although the question was not decided, the learned Chancellor, while confirming gen-

Troy *v.* Haskell.

erally the doctrine advanced in the cases we have cited, intimat-
ed an opinion that if a town were so divided that a part of com-
mon lands belonging to the inhabitants, but holden by the town,
should be included within the limits of the new town, the new
town might thereafterwards hold what of those lands fell within
their limits, on the ground that the legislature intended, in the
absence of any provision to the contrary, that each town should
thereafter take to itself the common lands falling within its
boundaries.

Even if this suggestion be sound, of which there may well be
serious doubts, it evidently can have no application to the pres-
ent case ; for the inhabitants of Fitzwilliam and Troy were and
still continue to be only interested in the demanded premises in
common with the rest of the community, and therefore no pre-
sumption of any intention of the legislature that Troy should
take them exclusively to herself, can arise. Any other corpora-
tion might as well have been trustee as the town of Fitzwilliam ;
for instance, the county of Cheshire, or the State of New-Hamp-
shire. It may be supposed that Fitzwilliam was selected because
the premises were within her limits, and she would be more likely
to see that the intention of the grantor was faithfully executed,
than any other corporation ; but there is nothing incompatible
with the discharge of her duties as trustee, in the fact that the
subject of the trust has since been transferred to the territorial
jurisdiction of another town.

We are, therefore, of the opinion that the deed of Thomas
Tolman vested the legal title to the demanded premises in the
town of Fitzwilliam as trustee for the public ; that the act incor-
porating Troy merely conferred on the new town territorial and
municipal jurisdiction over those premises, but did not transfer to
it the legal title ; and, upon the authorities, it seems clear that
the legal title remained in Fitzwilliam after the passage of that
act, as it had before been. At all events, Troy having no legal
title to any portion of the demanded premises, the questions
arising upon the pleadings become immaterial, the present action
cannot be maintained, and there must be

*Judgment for the defendant on the report.*